IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

CASE NO. 14-4204

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,
v.
DIERE DEJOURNETT,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

---

BRIEF OF PLAINTIFF-APPELLEE

---

Dennis Belli
Attorney at Law
2 Miranova Place
Suite 300
Columbus, OH 43215-7052

Attorney for Defendant-Appellant

STEVEN M. DETTELBACH
United States Attorney

Samuel A. Yannucci
Assistant United States Attorney
Two South Main Street, Room 208
Akron, OH 44308
(330) 761-0518
(330) 375-5492 (facsimile)
Sam.Yannucci@usdoj.gov

Attorney for Plaintiff-Appellee

ii
# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................III

STATEMENT REGARDING ORAL ARGUMENT ..............................................V

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE ...............................................................3

SUMMARY OF THE ARGUMENT .......................................................8

ARGUMENT .............................................................................12

I.    THE DISTRICT COURT CORRECTLY ASSESSED TWO CRIMINAL
      HISTORY POINTS TO DEJOURNETT UNDER U.S.S.G. §4A1.1(d) FOR
      COMMITTING THE INSTANT FEDERAL OFFENSES WHILE UNDER
      A CRIMINAL JUSTICE SENTENCE. .......................................12

      A.    STANDARD OF REVIEW ...............................................12

      B.    ARGUMENT .................................................................12

II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY
      DENYING DEJOURNETT'S REQUEST TO MAINTAIN HIS WRITTEN
      PLEA AGREEMENT AS A PUBLIC RECORD ON THE COURTS'
      PACER SYSTEM..........................................................18

      A.    STANDARD OF REVIEW ...............................................18

      B.    ARGUMENT .................................................................18

CONCLUSION ........................................................................22

CERTIFICATE OF SERVICE ............................................................23

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............24

iii
## TABLE OF AUTHORITIES

**Page(s)**

## I.   CASES

Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165
  (6th Cir. 1983) ...................................................................................9, 19

Harris v. United States, 204 F.3d 681 (6th Cir. 2000) ......................................7, 9, 15

In re the Knoxville News-Sentinel Company, Inc.,
  723 F.2d (6th Cir. 1983) ........................................................................18

Nixon v. Warner Communications, 435 U.S. 589 (1978) .................................18, 19

United States v. Baker, 559 F.3d 443 (6th Cir. 2009) ...............................................12

United States v. Brown, 217 F.3d 841, 2000WL930786
  (4th Cir. 2000) ........................................................................................16

United States v. Brown, 221 F.3d 11336, 2000WL 876382
  (6th Cir. 2000) ........................................................................................13

United States v. Caputo, 978 F.2d 972 (7th Cir. 1992) ............................................16

United States v. Johnson, 43 F.3d 1211 (8th Cir. 1995) ..........................................17

United States v. Labella-Szuba, 92 F.3d 136 (2d Cir. 1996) ....................................16

United States v. McCrudden, 894 F.2d 338 (9th Cir. 1990) ....................................16

United States v. Miller, 56 F.3d 719 (6th Cir. 1995) ...............................................16

United States v. Wales, 68 Fed. Appx. 575 2003 WL 214182229
  (6th Cir. 2003) ........................................................................................12

iv

## II.  <u>STATUTES</u>

Title 18, United States Code, Section 2 ................................................................3

Title 18, United States Code, Section 922(g)(1).....................................................3

Title 18, United States Code, Section 1956 ...........................................................3

Title 18, United States Code, Section 3231 ...........................................................1

Title 18, United States Code, Section 3742(a).......................................................1

Title 21, United States Code, Section 841 .............................................................3

Title 21, United States Code, Section 846 .............................................................3

Title 21, United States Code, Section 851 .............................................................3

Title 28, United States Code, Section 1291 ...........................................................1

## III.  <u>OTHER AUTHORITIES</u>

Ohio Revised Code, Section 2929 ...................................................................14, 15

Rule 34(a)(2)(C), Federal Rules of Appellate Procedure .........................................v

Rule 11(c)(2), Federal Rules of Criminal Procedure .............................................21

Rule 32, Federal Rules of Criminal Procedure ..................................................8, 12

Rule 52(a), Federal Rules of Criminal Procedure...............................................8, 13

U.S.S.G. §4A1.1.................................................2, 6, 9, 12-14, 16-18

U.S.S.G. §4A1.2.................................................6, 14, 17

v

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee, the United States of America, believes that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument. Thus, the government recommends that this case be decided on the briefs under Fed. R. App. P. 34(a)(2)(C).

## <u>JURISDICTIONAL STATEMENT</u>

The district court had jurisdiction over the indictment charging violations of federal criminal law under 18 U.S.C. § 3231.  This Court has jurisdiction over the appeal from the final judgment of conviction under 28 U.S.C. § 1291, and over sentencing issues under 18 U.S.C. § 3742(a).

- 2 -

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether the district court correctly assessed two criminal history points to Dejournett under U.S.S.G. §4A1.1(d) for committing the instant federal offenses while under a criminal justice sentence?

II.      Whether the district court abused its discretion by denying Dejournett's request to maintain his written plea agreement as a public record on the Courts' PACER system?

- 3 -

## STATEMENT OF THE CASE

A.     Procedural History.

On November 20, 2013, a federal grand jury in Cleveland, Ohio, returned a

two-count indictment (Case No. 5:13 CR 0513) charging Diere R. Dejournett

(hereinafter "Dejournett" or "defendant") with drug and firearms crimes.  (R. 10:

Indictment, PageID 21-24).

On January 14, 2014, a superseding indictment was unsealed which charged

Dejournett and nine others with various drug, money laundering, and firearms

charges.[1]  In particular, Dejournett was charged as follows:

| | | |
|---|---|---|
| Count 1 | Conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A); | |
| Count 2 | Felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1); and | |
| Count 3 | Money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2. | |

(R. 18: Superseding Indictment, Page ID 67-87).

On April 30, 2014, the government filed an Information pursuant to 21

U.S.C. § 851 alleging Dejournett was previously convicted of at least one drug

---

[1] The Superseding Indictment had been returned by the grand jury on January 9,
2014.  (See R. 18: Superseding Indictment, PageID 67-87).

- 4 -

offense punishable by a penalty in excess of one-year, and seeking enhanced penalties under the United States Code.  (R. 106: Information, PageID 454-66).

On August 21, 2014, Dejournett pleaded guilty to Counts 1 and 3 of the Superseding Indictment pursuant to a written plea agreement.   (R. N/A: Minutes of Proceedings; R. 169 Plea Agreement, PageID 1488-1508).

On November 20, 2014, a finalized presentence report (PSR) was filed with the Court.  (R. 238*sealed*: Revised Presentence Report, PageID 2266-85).

On November 20, 2014, Dejournett was sentenced to a statutorily required mandatory minimum of 240 months imprisonment. (R. 239: Judgment, PageID 2286-92).

On December 4, 2014, Dejournett filed a timely notice of appeal.  (R. 242: Notice of Appeal, PageID 2302).

B.    Factual Statement.

(1)    Investigative Background.

This prosecution arose from an extensive Organized Crime Drug Enforcement Task Force (OCDETF) investigation into the illegal activities of several substantial Akron heroin and/or cocaine drug traffickers, including Diere Dejournett.  The investigation included a series of court-authorized Title III wiretaps from March-October 2013 over a total of thirteen cellular telephones.

- 5 -

The investigation gave rise to two prosecutions: <u>United States v. Diere R. Dejournett et al.</u>, (10 defendants), and <u>United States v. Garland V. Phelps et al.</u>, (20 defendants) which were assigned to U.S. District Court Judge Sara Lioi (Akron).

     (2)    Dejournett's Criminal History Computation.

On December 18, 2014, the district court conducted Dejournett's sentencing hearing.  (R. 258: Sentencing Transcript, PageID 2380-2426).  The Presentence Report calculated Dejournett's Total Adjusted Offense Level as 33; his Criminal History Category as IV (based upon a total of eight criminal history points); and his advisory imprisonment range as 188-235 months, although he was subject to an enhanced mandatory minimum statutory penalty of 240 months pursuant to the parties' plea agreement.  (R. 238*sealed*: Revised Presentence Report, PageID 2272, 2276, 2280).

The Presentence Report further noted Dejournett's objection to being assessed two additional criminal history points for committing the federal offense(s) while under a criminal justice sentence, that is a 2011 Driving Under the Influence conviction in the Barberton (Ohio) Municipal Court.  (<u>Id.</u>, PageID 2275 (¶40), 2276 (¶44) & 2284 (Objections)).[2]  In particular, Dejournett contended that a

---

[2] With the two criminal history points added, Dejournett was a Criminal History Category IV, with an advisory imprisonment range of 188-235 months.  If the two

- 6 -

requirement to "obey laws for 2 years" does not constitute a criminal justice sentence under U.S.S.G. §4A1.1.  The U.S. Probation Officer responded to the objection as follows:

> The Sixth Circuit has ruled that "conditional discharge" sentences are the equivalent of unsupervised probation.  A sentence to "obey all laws for 2 years" would amount to a conditional discharge, thus, requiring the conviction to be scored pursuant to 4A1.2(c).  In addition, Application note 4 of §4A1.1 states active probation is not required for scoring.  Therefore, a sentence which states "obey all laws for 2 years" is similar to unsupervised probation.

(R. 238*sealed*: Revised Presentence Report, PageID 2284).

Upon review of the PSR, the parties' written sentencing memoranda, and after hearing the arguments of respective counsel, the district court concluded:

> Well, I'm going to start my ruling by saying what I said earlier.  And that is in this particular case, because there is a statutory mandatory minimum sentence, whether Mr. DeJournett is a III, criminal history III or IV is somewhat academic as it comes to sentencing.
>
> Now, whether or not this impacts placement, I do not know.  But one of my duties is to get the sentencing range correct.  And typically the criminal history category has an impact of that.  But in this case, it does not.  It doesn't matter if Mr. DeJournett's criminal history category is a I, II, II, IV, V, or VI because there was a statutory mandatory minimum sentence in this case.
>
> So I just want to make that clear.

---

points were not assessed, Dejournett would be a Criminal History Category III, with an advisory imprisonment range of 168-210 months.

So whether or not this has some impact as to other matters, I do not know the answer to that. But I still take my role seriously in at least making a proper calculation, whether or not it has an impact or not on the sentence.

So as to the scoring, the Court finds that the United States Probation Office did properly score the Barberton Municipal Court case in paragraph 44 of the presentence report and that it scored two points because the instant offense was committed while under a criminal justice sentence. And that was for that driving under the influence of alcohol set forth in paragraph 40.

And so I'm going to overrule that objection. And I am going to rely upon the language in the Sixth Circuit opinion of <u>Harris v. United States</u>, 204 F.3d 681. And it's the Court's ruling that the language used in the sentence in Barberton Municipal Court, which was a suspended sentence upon condition of the defendant obeying laws for two years, is the functional equivalent of unsupervised probation because it is a, as the government noted, a conditional discharge.

So the two points were properly assessed.

(R. 258: Sentencing Transcript, PageID 2400-01).

(3)    Dejournett's Plea Agreement.

Dejournett entered his guilty pleas in open court on August 21, 2014, pursuant to a written plea agreement. (R. 169: Plea Agreement, PageID 1488-1508; R. 257: Plea Transcript, PageID 2336-79). At the conclusion of the proceeding, Dejournett asked that his written plea agreement not be "sealed." (R. 257: Plea Transcript, PageID 2374-75). The Court denied the request, stating:

- 8 -

> It's just been my policy, whether –no matter what these agreements provide, to make them accessible to the Court and to the parties only. And if he wishes to do something different with his-

(Id., PageID 2374).

> That is my policy. And the Court has specific reasons why the Court has done that.

> So that's what I'm saying.  He has the ability to - he can have free access to this document.  But that is my policy.  And that is what I have done throughout these entire proceedings, and there is no – there is no exception that I'm going to apply.  And the Court has – we will just leave it at that.

> The Court has reasons to do what it's done.

(Id., PageID 2378).

## **SUMMARY OF THE ARGUMENT**

First, under the parties' plea agreement, Dejournett was subject to an enhanced 20 year (240 month) mandatory minimum statutory sentence for violation of federal drug laws.  While a district court is not required under Rule 32, Federal Rules of Criminal Procedure, to address disputed matters that do not affect a defendant's sentence, the district court nevertheless did so in this case.  (See also, Rule 52(a), Federal Rules of Criminal Procedure).   Specifically, the court correctly added two criminal history points to Dejournett's calculation for committing his federal offense(s) while under a criminal justice sentence – that is, a 2011 Driving Under the Influence conviction in the Barberton (Ohio) Municipal Court for which

- 9 -

he was sentenced to 180 days custody, with 177 days suspended, with the added conditions of obeying laws for 2 years and paying a $400 fine. (R. 238*sealed*: Revised Presentence Report, PageID 2275 (¶40)).

The Sixth Circuit Court of Appeals has consistently recognized that a sentence for a misdemeanor conviction that includes a requirement that a defendant commit no new law violations is the "functional equivalent of unsupervised probation," and therefore properly scored under the Sentencing Guidelines. See e.g., Harris v. United States, 204 F.3d 681, 682-83 (6th Cir. 2000)(concluding that, in Ohio, "[A]s a form of conditional discharge, a [Provided No Conviction] sentence is the 'functional equivalent of unsupervised probation.'"). Therefore, the district court did not clearly err in assessing Dejournett two criminal history points under U.S.S.G. §4A1.1(d) for committing "the instant [federal] offense while under any criminal justice sentence, including probation…." Even if the district court erred, however, it was harmless because Dejournett was subject to a mandatory minimum sentence of 240 months.

Secondly, trial courts have always been afforded the power to seal their records when interests of privacy outweigh the public's right to know. Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983). Here, serious criminal drug charges were brought against Dejournett and nine co-

- 10 -

defendants, along with 20 other defendants in an associated prosecution (also assigned to Judge Lioi), all arising from an extensive court-authorized wiretap investigation.   Although in both the underlying proceedings and on appeal the parties unfortunately refer to "sealing" – which commonly means a prohibition against disclosure to any person - the district court clearly expressed that Dejournett had full access to his plea agreement and was not prohibited from disclosing and/or publishing it to whomever in whatever way he chose.

In the context of Dejournett's request to the district court, it is clear he did not wish to be viewed as a "government cooperator."  However, it is well understood by the legal "community" in criminal cases – judges, prosecutors, defense counsel and defendants – that the proliferation of certain websites (such as "Rats R Us") and present prison culture place "cooperating defendants" and their families at risk of threats and/or physical retaliation/violence.  The district court's stated policy of restricting access to plea agreements in these multi-defendant drug cases to the parties only (government, defendant and court) is rationally related to the privacy interests of a large segment of federal defendants, while simultaneously allowing individual defendants to publish to the world their agreement(s) with the government, if they so choose.

- 11 -

Moreover, the district court wisely refused to make an exception for Dejournett.  To allow a single (or multiple) defendants to "opt out" of the court's policy would render the policy meaningless (and worse) by necessarily casting dispersions on and risking repercussions to the remaining defendants and their families (warranted or not).

Under the totality of circumstances here, the district court soundly balanced the public's common law right of access to judicial proceedings against the safety interests favoring nondisclosure, and did not abuse its discretion in denying Dejournett's request to have his plea agreement published on the Court's record system, especially as Dejournett pleaded guilty in open court and was not prohibited from disclosing his written agreement to particular individuals in whatever fashion he chose, or to the world as a whole via the internet.

- 12 -

## ARGUMENT

**I.    THE DISTRICT COURT CORRECTLY ASSESSED TWO CRIMINAL HISTORY POINTS TO DEJOURNETT UNDER U.S.S.G. §4A1.1(d) FOR COMMITTING THE INSTANT FEDERAL OFFENSES WHILE UNDER A CRIMINAL JUSTICE SENTENCE.**

A.    **Standard of Review**

This Court reviews a district court's factual findings in applying the

Sentencing Guidelines for clear error; and its legal application of the guidelines <u>de</u>

<u>novo</u>.  <u>United States v. Baker</u>, 559 F.3d 443, 448 (6th Cir. 2009).

B.    **Argument**

Dejournett concedes that the resolution of the asserted U.S.S.G. sentencing

issue does not affect his sentence; rather, he claims only that "the Bureau of

Prisons incorporates the inmate's total criminal history points into the calculation

of [the defendant's] security level," and that therefore, any error in his U.S.S.G.

computation cannot be deemed harmless.  Contrary to Dejournett's contention,

district courts are not required to rule on disputed portions of the PSR that do not

affect sentencing.   <u>See</u> Rule 32(i)(3), Federal Rules of Criminal Procedure.[3]

---

[3] <u>See</u> <u>also</u> <u>United States v. Wales</u>, 68 Fed.Appx. 575, N.11, 2003 WL 21418229
(6th 2003, wherein the court stated:

Although it is true that the Advisory Committee considered changing Rule 32 to
require district courts to make factual findings upon all disputed portions of PSR's
regardless of the finding's impact upon the defendant's sentencing guideline range,

- 13 -

When an error does not affect a defendant's substantial rights, it is generally

disregarded.  Rule 52(a), Federal Rules of Criminal Procedure; <u>United States v.</u>

<u>Brown</u>, 221 F.3d 1336 *14, 2000WL 876382 (6th Cir. 2000).  The district court

here recognized that the disputed sentencing guidelines' issue did not affect

Dejournett's sentence because he was subject to a mandatory minimum statutory

penalty of 240 months.   (R. 258: Sentencing Transcript, PageID 2400-01).  Thus,

even if the court erred, it was harmless.  Nevertheless, it is clear the district court

correctly addressed the claim. (<u>Id.</u>).

     Under U.S.S.G. §4A1.1(d), two points are assessed to a defendant's criminal

history score "if the defendant committed the instant offense while under any

---

in the end, the Advisory Committee decided not to so amend the rule:

> Finally, the Committee considered, but did not adopt, an amendment that
> would have required the court to rule on any "unresolved objection to a
> material matter" in the presentence report, whether or not the court will
> consider it in imposing an appropriate sentence.  The amendment was
> considered because an unresolved objection that has no impact of
> determining a sentence under the Sentencing Guidelines may affect other
> important post-sentencing decisions.  For example, the Bureau of Prisons
> consults the presentence report in deciding where a defendant will
> actually serve his or her sentence of confinement.  To avoid unduly
> burdening the court, the Committee elected not to require resolution of
> objections that go only to service of sentence.  If counsel objects to
> material in the presentence report that could affect the defendant's
> service of sentence, the court may resolve the objection, but is not
> required to do so.  [Fed.R.Crim.P. 32, Advisory Committee Notes, 2002
> Amendments].

- 14 -

criminal justice sentence, including probation, parole, supervised release,

imprisonment, work release, or escape status."  Application note 4 to §4A1.1

provides that a "criminal justice sentence" means a sentence countable under

§4A1.2 (Definitions and Instructions for Computing Criminal History) having a

custodial or supervisory component, "although active supervision is not required

for this subsection to apply.  For example, a term of unsupervised probation would

be included…."

Under Ohio misdemeanor sentencing law, a court may impose a jail term

from the range of authorized jail terms for the offense, "suspend all or a portion of

the jail term imposed, and place the offender under a community control sanction

or combination of community control sanctions" as authorized under ORC section

2929.26 (community residential sanctions), ORC section 2929.27 (nonresidential

sanctions) or ORC section 2929.28 (financial sanctions).  See Ohio Revised Code

§2929.25(A)(1)(b).  Each of these conditional discharge sections provides a non-

exhaustive sampling of potential sanctions.

Here, the district court properly added two criminal history points to

Dejournett's calculation for committing his federal offense(s) while under a

criminal justice sentence – that is, a 2011 Driving Under the Influence conviction

in the Barberton (Ohio) Municipal Court (R. 238*sealed*: Revised Presentence

- 15 -

Report, PageID 2275 (¶40)).  The PSR reflects that Dejournett was sentenced to 180 days custody with 177 days suspended, and the added conditions of obeying laws for 2 years and paying a $400 fine.  (Id.).  In the underlying proceedings, Dejournett did not challenge the fact of the conviction, or sentence imposed, but argued that the condition of "obey laws" did not constitute a "criminal justice sentence" under the guidelines.  On appeal, Dejournett may be correct that the municipal court need not have imposed "unsupervised probation as a condition of the jail term" – but the court did choose to impose conditions of discharge, to include the requirement to obey the law.  Under ORC §2929.25, if an offender violates any condition of a community control sanction, the sentencing court may impose one or more penalty, to include a jail term, a more restrictive community control sanction, or a longer period of community control (not to exceed a five year period).

The Sixth Circuit Court of Appeals has consistently held that a sentence for a misdemeanor conviction that includes a requirement that a defendant commit no new law violations is the "functional equivalent of unsupervised probation," and therefore properly scored under the Sentencing Guidelines.  See, e.g., Harris v. United States, 204 F.3d 681, 682-83 (6th Cir. 2000)(concluding that, in Ohio, "[A]s a form of conditional discharge, a [Provided No Conviction] sentence is the

- 16 -

'functional equivalent of unsupervised probation.'"); United States v. Miller, 56 F.3d 719, 722 (6th Cir. 1995)("We thus hold that conditional discharge [under Kentucky law] is the 'functional equivalent' of an unsupervised probation under U.S.S.G. §4A1.1(d).")  Other circuits have concluded similarly.  See, e.g., United States v. Labella-Szuba, 92 F.3d 136, 138 (2d Cir. 1996)(stating that "[a]lthough defendant's sentence did not include active supervision, her sentence did include a supervisory component in that [the court] retained the power to revoke her conditional discharge sentence" and, thus, her conditional discharge was the functional equivalent to unsupervised probation); United States v. Caputo, 978 F.2d 972, 976-77 (7th Cir. 1992)(stating that "[p]robation means that the convicted defendant is not incarcerated but must comply with various conditions set by the sentencing court and monitored by a probation officer…. Conditional discharge is the same except that there is no probation officer…. It is probation without the probation officer and this is a distinction without a difference so far as the purposes of the guideline exception is concerned.");  United States v. McCrudden, 894 F.2d 338, 339 (9th Cir. 1990)("The guidelines make no provision for treating 'unsupervised' probation as less than probation.  Even if unsupervised, probation can be revoked and replaced by a sentence of greater punishment if further offenses are committed during the probationary period"); United States v. Brown,

- 17 -

217 F.3d 841, 2000WL930786 (4th Cir. 2000)(unpublished)(conditional release predicated upon "good behavior" constitutes a term of unsupervised probation).

Dejournett's reliance on <u>United States v. Johnson</u>, 43 F.3d 1211 (8th Cir. 1995), in an attempt to escape application of U.S.S.G. §4A1.1(d) is misplaced, as it is distinguishable from the issue at hand.  <u>Johnson</u> did not concern U.S.S.G. §4A1.1(d); rather, in discussing whether a criminal history point should be assessed to the defendant under U.S.S.G. §4A1.2(c), the <u>Johnson</u> Court noted that when a sentencing court merely stays imposition of sentence without ordering an accompanying term of probation of any kind, the sentence, "a sort of judicial limbo," is more lenient than a disposition in which a term of probation is ordered to accompany the stay of imposition of sentence.  The Court concluded:

> On the basis of this unique Minnesota sentencing scheme, which grants a sentencing judge the discretion to impose a term of supervised or unsupervised probation as a condition of a stay of imposition of sentence, we hold that a straight stay of imposition of sentence without an accompanying term of probation of any kind is not a sentence of probation under U.S.S.G. §4A1.2(c)(1).

<u>Johnson</u>, 43 F.3d at 1215.

That is not the case here.  Dejournett's sentence was not stayed; rather he was sentenced to a jail term under Ohio law, which was largely suspended on the condition (in part) that he obey the law for two years.  Since this sentence is the "functional equivalent of unsupervised probation," as has been consistently

- 18 -

recognized by circuit courts, the district court did not clearly err in assessing

Dejournett two criminal history points under U.S.S.G. §4A1.1(d) for committing

"the instant [federal] offense while under any criminal justice sentence, including

probation…."

## II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING DEJOURNETT'S REQUEST TO MAINTAIN HIS WRITTEN PLEA AGREEMENT AS A PUBLIC RECORD ON THE COURTS' PACER SYSTEM.[4]

A.  **<u>Standard of Review</u>**

The decision about when judicial records should be sealed is left to the

sound discretion of the district court, subject to appellate review for abuse.  <u>In re

the Knoxville News-Sentinel Company, Inc.</u>, 723 F.2d 470, 474 (6th Cir. 1983).

B.  **<u>Argument</u>**

As the Supreme Court has stated:

> [T]he right to inspect and copy judicial records is not absolute.  Every
> court has supervisory power over its own records and files, and access
> has been denied where court files might have become a vehicle for
> improper purposes.

<u>Nixon v. Warner Communications</u>, 435 U.S. 589, 598 (1978).  Thus, trial courts

have always been afforded the power to seal their records when interests of privacy

---

[4] PACER is a fee-based electronic public access service that allows registered users to obtain case and docket information online from federal courts.

outweigh the public's right to know.  Brown & Williamson Tobacco Corp. v. FTC,

710 F.2d 1165, 1179 (6th Cir. 1983).  Overall, when exercising its discretion to

seal judicial records, the Court must balance the public's common law right of

access against the interests favoring nondisclosure.  See Nixon, 435 U.S. at 599

(stating that the court must consider "relevant facts and circumstances of the

particular case.").

   Here, serious criminal drug charges were brought against Dejournett and

nine co-defendants, along with 20 other defendants in an associated prosecution

(also assigned to Judge Lioi), all arising from an extensive court-authorized

wiretap investigation.  Although the district court and Dejournett (along with

government counsel) unfortunately referred to "sealing the plea agreement" –

which commonly means preventing disclosure of it to any person – it is clear that

the district court's policy was to allow access to the plea agreement by the parties

and the court. (R. 257: Plea Transcript, PageID 2374 & 2378).  Although

interrupted by Dejournett's counsel, the district court clearly expressed that

Dejournett had full access to his plea agreement and was not prohibited from

disclosing and/or publishing it in whatever way he chose.  (Id.).

   For his part, Dejournett (through counsel) was similarly clear in his reasons

for not having the plea agreement restricted:

- 20 -

Counsel:    Judge, we do have one request.  My client does not want
this sealed.  He wants this unsealed on Pacer.  There has
been no 5K, no cooperation, nothing by my client.  So he
does not want this sealed.

(R. 257: Plea Transcript, PageID 2374).

\*\*\*\*\*

Counsel:    Judge, that sends a message out to the community that he
cooperated with the government.

Court:    It does not. It does not.  It's my policy in all cases to do
that.

(Id., PageID 2378).

It is well understood by the legal "community" in criminal cases – judges,

prosecutors, defense counsel and defendants – that the proliferation of certain

websites (such as "Rats R Us") and present prison culture place "cooperating

defendants" and their families at risk of threats and/or physical retaliation/violence.

The district court's policy of restricting access to plea agreements in these multi-

defendant drug cases to the parties only (government, defendant and court) is

rationally related to the privacy interests of a large segment of federal defendants,

while simultaneously allowing individual defendants to publish to the world their

agreement(s) with the government, if they so choose.   (R. 257: Plea Transcript,

PageID 2374 & 2378).

- 21 -

The district court wisely stated it would not make an exception for Dejournett.  To allow a single (or multiple) defendants to "opt out" would render the policy meaningless (and worse) by necessarily casting dispersions on and risking repercussions to the remaining defendants (warranted or not).

On appeal, Dejournett further claims there was a violation of Rule 11(c)(2) , Federal Rules of Criminal Procedure, because "[T]he parties must disclose the plea agreement in open court when the plea is offered, unless the court for good cause allows the parties to disclose the plea agreement in camera."   This contention is without merit.  First, the Advisory Committee Notes to this section (formerly Rule 11(e)(2)) make clear that the purpose of the requirement is to insure that the bargain of the parties is accurately represented to the Court, and understood by the defendant, in open court.  Secondly, Dejournett pleaded guilty in open court, before the public at large, and the district court extensively reviewed the written plea agreement with him on the record.  (R. 257: Guilty Plea TR, PageID 2336-79).  Accordingly, the requirements of Rule 11(c)(2) were satisfied.

Under the totality of circumstances here, the district court soundly balanced the public's common law right of access to judicial documents (here the defendants' plea agreements) against the safety interests favoring nondisclosure, and did not abuse its discretion by denying Dejournett's request to have his plea

- 22 -

agreement published on the PACER system, especially as Dejournett pleaded guilty in open court and was not prohibited from disclosing his written agreement to particular individuals in whatever fashion he chose, or to the world as a whole via the internet.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court affirm the judgment of the district court.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:  /s/ *Samuel A. Yannucci*

Samuel A. Yannucci
Assistant United States Attorney
Two South Main Street, Room 208
Akron, OH 44308
(330) 761-0518
(330) 375-5492 (facsimile)
Sam.Yannucci@usdoj.gov

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of October, 2015, the foregoing Brief of Plaintiff-Appellee, was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Samuel A. Yannucci*

Samuel A. Yannucci
Assistant United States Attorney

- 24 -

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district

court's records are designated as relevant to this appeal:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID RANGE |
|---|---|---|
| Indictment | 10 | 21-24 |
| Superseding Indictment | 18 | 67-87 |
| Information to Establish Prior Conviction | 106 | 454-66 |
| Plea Agreement | 169 | 1488-1508 |
| Revised Presentence Report (**sealed**) | 238 | 2266-85 |
| Judgment | 239 | 2286-92 |
| Notice of Appeal | 242 | 2302 |
| Change of Plea Transcript | 257 | 2336-79 |
| Sentencing Transcript | 258 | 2380-2426 |
|  |  |  |